All right, let's take up our next case, Bueker v. Madison County, Andover. And I see the appellants are splitting up your time, which is fine. Please keep track of it between the two of you. Usually the first guy talks longer than he's supposed to, so if he does, that's just tough. So keep track of it between the two of you. I'll try not to be a time. All right, great. Please proceed, Counselor. Good afternoon, Your Honor. Good afternoon. May it please the Court, my name is Mike Shagg, and I represent Madison County in this action, and also one of its employees named James Foley. We are going to divide the argument into ten-minute, approximately, segments today. Mr. Andy Kasich is going to address some issues, and I will address some. I want to give you an outline in advance here. My argument today is going to concentrate essentially on the issues that are unique to Madison County. I'll be addressing the idea that there is no actionable claim against Madison County, based on the sale and error concept and on the money had and received concept. I'll also share a few remarks about James Foley. Mr. Kasich is going to concentrate on the issue of predominance, that is to say the requirement that there be a predominance of common questions over questions affecting individual class members, and he will also address the concept of damages and whether those, in this case, can be addressed on a class-wide basis. Some of those issues will affect Madison County as well as the others, but we have divided our time accordingly. Your Honors, this is an appeal of a class certification order emanating from Madison County. The county treasurer in Madison County conducted tax sales for the years 2005, 2007, and 2008 and was alleged to have been conspiring with certain tax buyers in the injection of an inflated penalty rate, and that would be on delinquent property taxes that were dealt with at tax sales. The county treasurer and certain tax buyers were convicted of crimes related to that. They were based on the Sherman Antitrust Act. The tax sale itself, however, was authorized by law, and the tax sale is an ordinary function of the treasurer's office. A tax sale involves a situation where a buyer receives a certificate of purchase pertaining to the tax liabilities of delinquent property owners. A delinquent taxpayer has the opportunity in law to redeem their own taxes by paying taxes, penalties, and costs, or in the alternative, if they never do end up redeeming the liabilities, then the certificate holder can eventually get a tax deed on the property. Either way, the county does not retain penalty interest. The standard of this action on this class certification appeal, Your Honors, is abuse of discretion. It is important to note and understand that discretion is not unlimited, and that in a class action case, it is bound by 735 ILCS 5-2-801, which enumerates various things that have to be considered in the formation of a class. The predominance of common questions, the adequate representation of the class by its class members, the representatives, and then a class action is the appropriate and fair and efficient method for adjudication of the issues. Now, I note that some of the cases dealing with the standard of abuse of discretion actually use the word or and say it's got to be an abuse of discretion or the court's application of impermissible criteria. So one could say that the application of impermissible criteria is also part of the standard review. It may be equally true to say that applying impermissible criteria is an abuse of discretion. May or may not be a distinction with a difference, but I wanted to offer that to you, that there's at least potentially two different ways that you could look at this on a standard review basis and find a reason to overturn the class certification order. Now, we have contended in our papers that Madison County is asserting there is no actionable claim against it. And therefore, class action is not proper in this case. The two theories against Madison County that are standing and remain in this case, and I'll address them each. One is called sale and error, and the other is a cause of action called money had and received. There is no claim of conspiracy against Madison County standing. There is no claim of respondeat superior standing. There is no claim of a benefit to the county deriving from the county treasurer's activity. Allegations alone in a complaint are insufficient to support a class action, and the failure to deduce evidence supporting the claims by this stage is fatal to the action. There are a number of class action cases in Illinois law. Some come out one way and some come out the other in terms of whether the class action is valid or certified. The one thing that's clear as you read cases like, and these are all cited in the briefing, Aguilar, Barber Sales, Inc., and Coit Chiropractic, is that the appellate courts are quite willing to look into the underpinnings of the cause of action, which is brought at this stage of the game in terms of whether a class action should be certified. I'd also note that one of the cases that the plaintiff appellees in this case cite to, which is called Cruz Unilog, was apparently cited because it leads to the result of the class action being certified, but I think the integral part of that case is that the court unwrapped and entangled itself with the underlying action to determine whether it was a cause of action that could proceed or not as the basis for the class action, and that is, in fact, the point here. On the sale and error concept, it is a statutory right of action. 35 ILCS 200-21-310 gives the basis for this action. It's basically a process where you can undo the sale of a specific parcel for an enumerated reason. The statute itself dictates who can file this action. The taxpayers are not listed. You can be a county collector or a municipality and bring this cause. Neither one of those is involved in this case, and no one disputes that. The only other party that could bring this cause would be an owner of a certificate of purchase, and that in this instance is equal to the tax buyers, the defendants in this case, other defendants besides Madison County. In other words, the taxpayers have no right of action under the statute. Even when you look at the legislative history of the statute, it's clear. The ordering of this code has been changed over time. This provision emanates from a prior provision of the tax code in the Revenue Act. It's never had a cause of action for the taxpayer. It's been expanded over time to include things like the county collector and a municipality. The legislature has pronounced specifically to expand the statute in order to include them. But the taxpayer, the property owner, is not a proper party to bring this cause of action. The statute is intended to benefit the tax buyer, not a delinquent taxpayer. We can look at the LaSalle National Bank case for that proposition, and a taxpayer cannot put themselves in the shoes of a tax buyer. That's what was attempted in in-ring application of the county collector, and that concept was rejected in that case. I'd also note that there is a statutory limitation period of five years in this case. None of the plaintiffs, the class plaintiffs in this case, would qualify. The only one who conceivably could would be the Richeson Real Estate Company, which was the only one that had a 2008 sale. But I would note that Richeson redeemed its own tax liabilities in that case. But the five-year limitation applies to them all. With respect to money added or received, it's really quite simple to understand that concept. It's a cause of action that is founded in unjust enrichment. There's got to be unjust enrichment, and if you follow the process of the tax here, what's happened, yes, there was a point in time when Madison County took in the penalty, but only as a pass-through. It's never retained it. That money goes to the tax buyers. That money goes to the tax buyers, so it's a pass-through. In every case that was cited for the proposition that money had and received is a cognizable cause of action against the county, by the opposition's briefing, you actually have a party who is unjustly enriched by keeping money, by keeping value. And that is not the case here with Madison County. Finally, as I reach the end of my ten minutes here, I just want to mention that Mr. Foley was an employee in the county treasurer's office. He's present at some, not all, of these auctions. He was not present for the 2008 auction. He did not pick the winning bid. He was not an auctioneer. He basically read down a spreadsheet and read out the parcel numbers and the amount of tax due. Fairly ministerial function in that respect. But I guess the important thing to think about with respect to Mr. Foley's part of this is that it really is not an issue of class-wide proof, which is required in a class action. The action against Foley differs in character and quality as it relates to all of the other people. The plaintiff in its own brief says defendants' injurious behavior did not vary according to individual class members, but Foley is not doing the same thing as the allegations against the tax buyers in this case. So it would be an abuse of discretion to overlook Foley's individual issues in this action. So common questions must predominate over questions affecting individual class members, and that's what I'll turn the argument over to my colleague. May it please the Court, as Mr. Shagg indicated, my name is Andy Kasnitz, and I'm speaking on behalf of tax-linked purchasers. We filed a joint brief among many of us, and then others joined in, and I have the pleasure of speaking on behalf of all of them today. I won't reiterate the points that Shagg has made, but I do want to have a couple of preliminary comments before getting into the fundamental issue, which is the predominance issue. And one is that I think the parties and the Court are fortunate here. We have two really good cases for the Court to look at. One is an Illinois Supreme Court case, the Smith case that's cited in all the papers and discussed, which was a class action case involving a derailment of a train and some toxic chemicals that spilled. And that made its way in a similar procedural fashion as this case has, all the way into Supreme Court, and it was concluded that a class could not be maintained. And the other case is the Alexander v. QTS case, which was a Northern District of Illinois Federal Court case. And the importance of that, also a class action case, involved a Cook County tax purchasing. The treasurer there in the same kind of scenario, alleging Sherman antitrust violations and determinations of whether or not a like proceeding could proceed as a class action. In that case, which has some age on it, and there's been some new case law since, it was determined that only a liability class could go forward, not a class for damages. So I think that, like I said, the parties and the Court are fortunate to have two really good cases to look at and to assess, and I think this case will turn on those two cases primarily. Under the Illinois statute, which is based on the federal statute, the predominance requirement is the one that is most often litigated and is most important here, we believe. To satisfy the predominance requirement, the cases show that the proponent must show the favorable adjudication of the claims that the named plaintiffs will establish a right of recovery in all the class members. And it's important to note at the outset, it's based on the definition that has been, the class definition that has been subject to the certification order. There are members of the class, as certified, who will not have suffered any injury. And the reason I say that is some of the tax certifications would have been purchased at 18%, which is the maximum rate in any event, regardless of whether there was any alleged collusive activity. And that is shown by, and this was in the evidence, statistically, in the year preceding, 2003 preceding the alleged class period, 27% of all the legal taxes were sold at 18%. In 2010, the year after the alleged period, 38% were sold for 18%. Somewhere between a quarter and a third of the tax certifications, regardless of collusive activity, are going to go to 18%, period. All of those folks who suffered no injury whatsoever are necessarily part of this class. And the class fails on that basis alone. So there's two points, several points on predominance. One is a liability issue, and the other is a damages issue. On the liability side, the plaintiffs need to show, whether it's a class action or an individual action, that they suffered an antitrust injury. As I said, some members of this class cannot show that. In addition to that, the showing of whether or not an individual or a class member, the showing has to be the same, suffered an antitrust injury is by its very nature specific to that person, specific to that property owner. And there are many variables and many factors that go into that. And this is where the Smith case, the train derailing case, comes into play. And that was a case that came through this court. In that case, there was a spill, a train derailing and a spill. And on behalf of members of the community, there was an attempt to file a class action. The class action was filed, an attempt to bring a class action. And it was initially determined that they could. Ultimately, by the time it got to the Supreme Court, the Supreme Court said you can't, because the individual members of that community, the potential class members, still have to show they were injured. Think of it in the context of a jury instruction. On the right, it always says, any verdict you write, the last element, the last paragraph of a jury instruction is going to be, and plaintiff was therefore damaged. You still have to prove that, whether it's a class action or whether it's an individual action. And here, like in Smith, those individuals need to prove that. So that is a liability issue before you even get to whether or not damages are appropriate for class action treatment. And there, and we've read this pretty thoroughly, I think, the key is that beginning, the standard for predominance is whether common or individual issues will be the object of most of the efforts in the litigation. Broken down, that means, what are we going to spend our time litigating here? What's the discovery going to be about? What's the trial going to be about? And I would suggest to the court, and as Mr. Shagg indicated, there are, there was the treasurer of Madison County and three individual tax lien purchasers who pled guilty. And there were convictions based on those guilty pleas, and they served time. There's not going to be much litigation about those facts. Those facts are undisputed. Where the litigation in this case is going to be is whether or not there were individual injuries. That takes it out of the class setting. And the easiest one, whether or not there are class-wide damages, and whether those can be determined in a way that is satisfactory, that's not arbitrary. And that's what all the litigation is going to be. And the litigation about damages, it's all going to be individuals. And we've laid out the various factors on the property. Of course, the court knows that the property is inherently unique, and that's where we'll get into the Alexander case in a moment. The rule is that the plaintiff must present a sound, fair, and this is important, non-arbitrary methodology for determining damages. Here, what they've done in the class definition is they've just created a floor of 12 percent. Anything above 12, they say, are class-wide damages. There's no basis in the evidence for that at all. There is none. That is clearly arbitrary on its face. Now, briefly, in the Alexander case, and again, that was a case like this, an antitrust case, tax purchaser case. And as I indicated before, the federal court in that case did grant certification to a liability-only class. I'll get to that in a moment, but that would not have happened if that case came up today. And the reason it wouldn't happen is that the law has changed. The federal law has changed significantly since the time that was entered. At that time, you only need a common fact in order to meet the standard. Since that time, and we cited in our brief the Walmart v. Dukes case and the Comcast case, federal law has changed on that. That case on liability would be decided differently today. But here's the even more important thing. As to damages in the case, you know, in this respect, identical to the case before the court today, the Northern District found, and while I rarely quote, I think it's just done so well, the court finds that as to actual damages, and reading from page 12 of the opinion, individual questions will predominate, and therefore the court recommends that damages be determined on an individual basis if class-wide liability for conspiracy is found. And here's the important part. Given the unique character of parcels of real property, which are at issue here, the court is unconvinced at this stage of litigation that plaintiffs could calculate individual damages without resorting to 28,000 mini-trials. Now, that was in Cook County. There's more property. There are more certifications, so it's even bigger than it is in Madison County. I heard the number 10,000. I don't know if that's true or not. The court goes on to state, it is clear to the court that plaintiffs cannot demonstrate that individual damages are calculable on a class-wide basis at this stage of litigation. Here, there is not a single unit overcharge that applies to each property. Furthermore, it is not at all clear what characteristics defendants, the tax purchasers, take into account when bidding on properties. It is Hornbook law that property is not fungible. Therefore, two seemingly identical properties may be bid on at very different rates for any number of reasons. We have set forth, there's an affidavit from our expert, a gentleman named Keith Seifert, which sets forth all the variables that we're talking about and set forth in our brief at great length. That's exactly what the court was talking about there in exactly the same situation we have here today. So, with that in mind, I think those two cases, as I said at the outset, a careful reading of those are dispositive of the issues before the court today. In addition, the plaintiffs presented no methodology for damages. Just an arbitrary 12% and then the gap between 12 and 8. Interestingly... And you'll have some time for rebuttal. Thank you very much. Argument on behalf of the appellees. May it please the court. Counsel. Nelson Newton. I'm here on behalf of the appellees in this case. And I'm going to address all of the issues that have been raised in this matter. I believe Judge Beckerman, the primary issue in this case, appears to be around the issue of whether adequate damages can be established at trial in this case, both as to liability and as to the damage itself. However, I think it needs to be focused on what Judge Becker said in his decision in the trial court below, focusing on this particular issue. And I want to quote from his opinion because I think it's extremely... His decision is extremely important. Quote, for an individual plaintiff to prove that a lower rate, tax rate, would have been bid and what that rate would have been for a particular piece of property. The court fails to understand how the defendants, if liable, can essentially rig the game so they can illegally obtain the money and then say, quote, And because you, the owners, can't prove your damages, we get to keep the money. And that's essentially what we have here in this particular case. All of the elements they are talking about concerning the issue of damages would have gone into the decisions of the tax buyers if they had made... had a truly competitive sale. What they did, however, is take all of those elements out of the sale by their conspiracy. And now they're claiming, oh, because we conspire, you cannot use these, you cannot prove damages because the elements are not there. And it's the elements of some of the various issues that do make the property unique. But Judge Becker addressed that issue in his decision in the trial court below. And it's our position, essentially, that because of that, we are dealing with a proper situation where damages can be determined. Again, the issue, the test of predominance is whether common or individual issues will be the object of most of the efforts of the litigants. And here, I think, we have a predominance. Let's look at, essentially, what we're talking about. We're talking about four tax sales at which we have at least four people who admittedly conspired to rig the tax sales and bid up the values to 18%. We are also seeking to include others, other defendants, named defendants, who we believe were a part of the conspiracy. That is essentially what's going to be the part of the trial as to liability in this case. Whether the parties conspired to basically rig the tax sale process. And that is the primary focus of it. So it's clear we have very common issues and common factual matters on this. For example, we will be looking at the activities of the defendants at each global sale, looking at their seating charts, the manner of acceptance of the bids, campaign contributions, which we believe is the triggering figure for the conspiracy. But essentially, we're just looking at this microcosm of sales. Furthermore, the anti-competitive activity affected the entire sale. As we indicated in our brief, if you look at the percentages that were sold and the sudden jump in the years concerning this particular sale, as we said, they did acknowledge the 27% in the year prior to. But that 18% figure jumps up to 50% the next year. And then in the following three years, part of the conspiratorial years, goes to 81.4%, 99.7%, and 96.9%. It's very clear that this conspiracy, based upon those percentages, which were provided as part of our complaint and were the issues to be considered by the trial court, essentially shows the type of conspiracy and infected the entire sale and affected all the individual property owners whose taxes were purchased at these sales. Counsel, Judge Becker, the trial court said they anticipated the termination of damages would be problematic. Is there a methodology that the plaintiff has on how these damages will be determined? And I know the trial court looked at affidavits, and each side had affidavits from experts that... We actually did not provide an expert at that point, Judge, and I'll be perfectly candid. Our position on the terms of the percentages is if you look at the years before and years after and come up with averages, we think it would be an appropriate way to determine damages. However, the judge did indicate initially he was probably going to bifurcate the trials between liability and damages in an attempt to basically sort this out. How did the trial court come up with the 12%? I believe that was what we planned in our initial petition. It was actually changed in the Second Amendment petition to 0%, but I believe that's what they took as guidance, and they felt that was a good average at the time. It's unclear as to how he came up with that percentage, though. Okay, so based upon historical data, you're saying you don't know if it was... Was there historical data presented to the trial court that we had so many cases under 12% and so many purchases over 12%? Yes, Your Honor. Thank you. Getting back to the issue of predominance, which used to be the issue here, again, we're looking at a single type of tax sale with various elements. We suggested a number of cases. I think the primary one, in terms of difficulty in determining damages, is the Walzak case versus Onyx Acceptance Court, in which that particular case involved a notice of assent to various consumers under the UCC, and the defendant in that pointed out, well, there's going to be difficulty in terms of calculation of various damages because each individual defendant may not have been able to, in that particular case, recover their vehicle despite the failure of notice, and the court basically said that does not make any difference in terms of determination of class certification, that the class should be certified under these particular circumstances. I would like to also address both the Smith case as well as the Alexander case. Again, what is interesting to note about Alexander, it does make it an issue in terms of damages, but they also certify the entire class as to liability, and it is essentially they're saying that if you're talking about the type of conspiracy, invigorating, in a tax sale, then it clearly can be certified by formal purposes of liability only. There may have to be distinctive trials, maybe for some of the property, but that would be all there. As to Smith, I think it's very significantly different. That was a mass court action concerning a spill of chemicals as a result of a railway tank crash, and within, if you look at their definition, they're really, they basically, the definition talks about, it almost includes a liability concept individually for each claimant because it says the class will include all people who reside in this particular area who've suffered essentially damages. It's significantly different from this case where basically it's our position that when you infect an entire sale and invigorate the structure, that you are essentially infecting all of it and you can just look at the class as a totality as opposed to the individual personal injuries that you were looking at in the Smith case. I think it's significantly different in terms of, because not only do you have the personal injuries, you have the nature of the personal injuries, you have, in that particular case, how far the individuals were away from the injury, the accident, and also talks about compensatory or punitive damages. There's a question as to whether personal injuries, property damages. There is a number of elements that went into that class definition that you don't find in the class definition here because the class definition here is very simple and straightforward in the sense that all you're talking about are the property owners who taxes the sale at these particular sales. There was also a mention of the Comcast case by counsel opposing. That was a U.S. Supreme Court case. Again, we believe that's significantly different because in that particular case, they were talking about the fact that denying class certification because the damages model did not relate to the type of damages being instructed. In fact, if you look at this case, the Seventh Circuit case, I.K.O. Ruthie and Shingle distinguishes that significantly in the sense that the ruling of Comcast was one that would have applied regardless of whether it was a class case or an individual plaintiff case. Basically, they were saying that there was insufficient relationship between the damage model and the recovery, and I.K.O. indicates that that's not to be considered under these circumstances. As to the arguments from Madison County, I will address those briefly. First, I do want to make note of the fact that from our perspective, this is kind of an interlocutory appeal of a motion to dismiss that had already been decided by the trial court below. If you go to... There was a motion to dismiss both the money-hadn't-received count as well as the sale-and-error count response in the First Amendment complaint, which was basically repeating the Second Amendment complaint, and the trial court denied those motions to dismiss, and that's in the record at 376, and the order denying it is a record at 414. As to the money-hadn't-received, there is no question that Madison County received this money. It went into the general fund. Despite the fact that they may have ultimately paid it out, they were the recipients by law of those particular funds, and, therefore, they are required to recite the case of jury versus county in the claim, or we believe it applies to this particular case. It says, any money received by the county into its treasury is recoverable from the county, and, therefore, we believe the money-hadn't-received count clearly applies in these circumstances. As to the sale-and-error, they mentioned in the south, and we believe that also a case law that we signed in our brief addresses these issues. LaSalle Bank specifically talks about the fact that a tax-buyer property owner has his remedy in action by chancellery, etc., when signing a tax sale, which, again, falls under this. We also cite the West Desert Suburban Hospital sale, which we believe has the same standard. Furthermore, as quoted by Judge Becker, in looking at the statutory provision, he basically says a conspiracy can hardly not be a sale-and-error when you have, basically, a conspiracy to bid-rate, as defined by the statute. For these reasons, we believe that the court will properly deny the motion to dismiss prior to the class certification motion, and that ruling on the merits at this time, again, is basically a form of interlocutory appeal of an issue that's already been resolved by a trial court. That will conclude my summary, unless the court has any other questions. Thank you, Counsel. Thank you very much. Rebuttal argument. Your Honor, Mike Shagg again. I'd like to address a few brief points. First, with respect to the comments pertaining to the conspiracy. This seems to be a problem throughout, really, the case entirely. The plaintiff appellees appear to kind of want to sweep the county in and fold in with the conspiracy. The fact is, there's only two standing theories that are viable in the action against Madison County, and they're not actually viable at all. I went through those, sale-and-error, money hadn't received. If they want to sustain this action against the county, they've got to fit it into those because the conspiracy theory is not going to work against the county. It doesn't exist in these claims. So that really has to stand alone. And with respect to Counsel's comments on the money-had-and-received concept, it's really crucial to understand that money-had-and-received is an equitable doctrine. It's founded on unjust enrichment. Merely passing money through the county is not enough. You have to ask the question, where does the money reside now? Who would pay the money that's been the subject of the unjust enrichment? Their theory seems to be that merely touching money as a pass-through is sufficient. It is not. In fact, the cases in their brief that are cited in this area all deal with somebody who kept money, retained it permanently with the intent to keep it permanently. That is not the case here. The penalty interest goes to tax buyers. That's the whole concept behind the tax sale to begin with. The county puts the property up for sale, or excuse me, puts the liabilities up for sale. The tax buyer agrees and takes that on, essentially paying the taxes for the person, for the delinquent taxpayer. And then a penalty interest is applied to that. If they want to redeem their property, they can pay that penalty interest, but they're not paying it to the county. They're paying it to the tax buyer. And if they don't pay it, the tax buyer keeps the property. The county doesn't keep any of it, so it's completely a pass-through concept. Money had and received doesn't apply here. Counsel, before we run out of time, let me ask a question. It goes to the predominance issue, and I don't know if Mr. Cassius wants to respond or if you want to, but the idea was floated about a class on liability and then many trials on damages. I don't think that's what the trial court was ordering in making the determination on the class, but do you have a response on that? Yes, Your Honor, I do. The court did not order that. Whether there's some bifurcation in the future, I suppose remains to be seen. A court, I suppose, could do what it wants to do in that regard on future proceedings, but there's been no such action taken and it really wouldn't make a lot of sense because there's a number of reasons why there's a lot of differentiation here. Counsel actually started to list the factors, some of the factors that show a lack of predominance. We could talk about them for a very long time, how the sales were conducted, whether the participants, the defendants, actually were part of the conspiracy or whether they weren't, whether or not they made campaign contributions, and then we could talk about the property itself. You know, real property is in and of itself a fairly unique item, having different values in different points of time. The economic climate, the real estate market, improvements on the property, all these are the variables that would go into these sorts of things. I believe one of you asked about whether there had been a showing on damages methodology, and that's a very perfect question because there really hasn't been. That's kind of still a mystery, how we're going to do that, because each one of these properties is going to have an individual damages that's going to have to be calculated. Some might not even have any damages, but at this stage of a class action, you have to have a show of evidence. They can't stand on naked allegations. They actually have to make a showing here, and in some instances, and you can read it in the case law, there is a property of an expert witness who throws out a theory of some kind. But here we're left with that being rather a great mystery. Since the court seems to be interested in predominance, and I know my colleague had some remarks on that subject, I'd be willing to yield the floor to that further if you don't mind. Okay. I can see that the yellow light is on now. It's off. Well, he responded to my question, which this idea of a bifurcated, and that's what the court ordered. The trial court says it's a problem determining damages, but didn't really suggest a bifurcated trial. Right. Because I read the order. I do, too. I think there's two things there. One, I think you saw the trial court trying to find a way to certify a class but struggling to do so, and I think by his own words there, he shows an abuse of discretion. He shows that I know there's a problem here, I can't do it as I sit here, but I think sometime in the future we'll figure this out, and that's not what the standard is. The standard is you have to have a basis, you have to have evidence on the basis of that order now at the time of certification, and that's absent. The second point is, Your Honor, under the Alexander case, the reason that the court was able to do a liability-only class is because the federal law at that time said all you needed was one common fact. That wouldn't exist today under the current status of class action jurisprudence. Thank you, Counsel. Thank you. Counsel, thank all of you for your well-written briefs. In this case, we'll take this case under advisement and issue a decision in court.